UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X

PEDRO ROSARIO,

                Petitioner,

-against-

JOSEPH T. SMITH, Superintendent of
Shawangunk Correctional Facility,

                Respondent.

------------------------------------------------------------X



07 Civ. 3611 (WHP) (JCF)

MEMORANDUM AND ORDER

WILLIAM H. PAULEY III, District Judge:

        Pedro Rosario ("Rosario") seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254. In a Report and Recommendation dated July 30, 2008 (the "Report"), Magistrate Judge James C. Francis IV recommended that this Court deny the petition. Both parties object to the Report. For the following reasons, this Court adopts Magistrate Judge Francis's well-reasoned Report and denies the petition.

## BACKGROUND

I. The Homicides

        Following a jury trial in New York Supreme Court, Bronx County in November 1995, Rosario was convicted of three counts of murder. On May 18, 1992, Rosario hired Cory Jackson ("Jackson") to murder two men. (Report at 2-3.) Milton Harris ("Harris") and Nicholas Taylor ("Taylor") accompanied Jackson to the victims' apartment. The police discovered three deceased victims at the apartment. Thereafter, the police questioned Harris and Taylor, and both

of them gave statements. (Report at 3.) Three years later, and six weeks before trial, the prosecution disclosed to Rosario's counsel two of Taylor's statements.

II. Brady Hearing

As a result of that late disclosure, the trial court held a Brady hearing. (Report at 4.) Taylor's statements contradicted portions of Harris's statement. (Report at 4.) Taylor testified at the Brady hearing that because of a mental disability, he had trouble understanding things at times and was unable to remember any details from the night of the shootings. (Report at 4.) The detective who took Taylor's first statement testified that Taylor's level of intelligence was years behind his actual age. (Report at 18.) After meeting with Rosario's defense counsel, Taylor was convinced that he was going to jail because he could not remember the events. (Report at 19.) The district attorney and Rosario's counsel agreed that Taylor, although sixteen years of age, had the "intelligence level equivalent to that of a ten-year-old." (Report at 19.) The trial court found that the prosecution violated its disclosure obligations and permitted the admission of Taylor's two statements at trial as a remedial measure given that Taylor could no longer remember the events. The trial court also instructed the jury that it could draw an adverse inference against the Government because of the prosecution's failure to disclose the statements. (Report at 5.)

II. Trial

At trial, Harris initially testified that he had forgotten the shootings and the preceding events. (Report at 6.) After being placed in protective custody, he admitted that he had feigned memory loss because Rosario had threatened him before trial. (Report at 6.)

2

Harris then testified that he was present when Rosario hired Jackson to kill two men, identified the gun Rosario gave Jackson, and stated that he accompanied Jackson to the shooting. (Report at 6-7.) Harris further testified that he heard a gunshot after Jackson entered the apartment and that Jackson later told Harris he had been paid for committing the murders. (Report at 7.) Other witnesses and physical evidence corroborated his testimony. (Report at 7-8.) Rosario's counsel cross-examined Harris, highlighting several inconsistencies between Harris's pretrial statements to the police, and his testimony to the grand jury and on direct-examination at trial. (Report at 8-9.) Counsel also challenged Harris's testimony as self-serving and unreliable because he had been a suspect. (Report at 8.) Finally, defense counsel introduced Taylor's statements. (Report at 10.)

III. Post-Trial Proceedings

On direct appeal, Rosario claimed, inter alia, that the prosecutor's Brady violation had deprived Rosario of the ability to effectively use Taylor's statements at trial and that trial counsel had been ineffective for failing to call two alibi witnesses. (Report at 12.) The Appellate Division First Department affirmed the conviction and the Court of Appeals denied leave to appeal. (Report at 13.)

In April 2006, Rosario filed a second motion to vacate his conviction on the ground that the prosecution intimidated Taylor into testifying that he could not remember the events of the night of the murders. (Report at 14-15.) Rosario submitted sworn statements from Taylor, transcripts of Taylor's interview with an investigator, and the investigator's notes from the interview. (Report at 14-16.) In his sworn statement, Taylor claims that either an assistant district attorney or a detective told him to implicate Jackson or there would be a contract for

3

Taylor's murder. (Report at 15.) However, when asked whether someone convinced him to forget the shooting, Taylor stated: "no, it was at a time when it was hard for me to remember things." (Report at 19.) The trial court denied the motion, finding that Taylor's "new statements [were] inherently unreliable since they contain[ed] errors and [were] inconsistent with his prior accounts of the incident." (Report at 16.)

## DISCUSSION

I. Standard of Review

The Court reviews the findings and recommendations of a magistrate judge and "may accept, reject, or modify [them], in whole or in part." 28 U.S.C. § 636(b)(1). The Court reviews de novo those parts of the Report to which objections are made, and reviews the remainder for clear error on the face of the record. 28 U.S.C. § 636(b)(1); Nelson v. Smith, 618 F. Supp. 1186, 1189 (S.D.N.Y. 1985).

Where a state court has adjudicated the merits of a claim raised in a federal habeas corpus petition, a writ of habeas corpus may issue only if the state court's adjudication resulted in a decision that (1) "was contrary to . . . or involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States," or (2) was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. 28 U.S.C. § 2254(d); see also Williams v. Taylor, 529 U.S. 362, 364 (2000); Francis v. Stone, 221 F.3d 100, 107-08 (2d Cir. 2000).

II. Intimidation of Taylor

"Factual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary . . . ." Miller-El v. Cockrell, 537 U.S. 322, 340 (2003). "A petitioner can overcome the state court's factual determination only if it is not fairly supported by the record or not adequately developed at the state court hearing." Cox v. Ebert, No. 06 Civ. 3159 (PAC) (JCF), 2007 WL 2948160, at *9 (S.D.N.Y. Oct. 10, 2007) (internal quotation marks and citation omitted). While Taylor told investigators that a detective or assistant district attorney importuned him to implicate Jackson, the record reflects that Taylor suffered a cognitive disability, bouts of memory loss, and misinterpreted conversations. In light of these facts, the state court's finding that Taylor's latest statements were unreliable was factually supported by the record. Rosario argues that this Court should hold an evidentiary hearing to determine whether Taylor suffers a cognitive disability. Because Rosario fails to meet his burden to overcome the state court's factual determination, there is no basis for this Court to hold such a hearing.

III. Brady Material

"[T]o the extent that a prosecutor knows of material evidence favorable to the defendant in a criminal prosecution, the government has a due process obligation grounded in the 14th Amendment to disclose that evidence to the defendant." DiSimone v. Phillips, 461 F.3d 181, 192 (2d Cir. 2006) (citing Brady v. Maryland, 373 U.S. 83 (1963)). "To establish a Brady violation, the evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." United States v. Gil, 297 F.3d 93,

101 (2d Cir. 2002) (internal quotation marks and citation omitted). "Evidence is favorable to the accused if it either tends to show that the accused is not guilty or if it impeaches a government witness." Strickler v. Greene, 527 U.S. 263, 281-82 (1999). The prosecution must disclose favorable information "in sufficient time to afford the defense opportunity for its use." DiSimone, 461 F.3d at 196.

"The Supreme Court's test for a Brady violation requires us to ask whether petitioner has established the prejudice necessary to satisfy the materiality inquiry." Disimone, 461 F.3d at 196. "The evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." United States v. Bagley, 473 U.S. 667, 682 (1985). "[A]dditional evidence tending to further impeach the credibility of a witness whose character ha[s] already shown to be questionable," is generally not considered material. United States v. Petrillo, 821 F.2d 85, 89-90 (2d Cir. 1987).

Where the prosecution has violated its Brady obligations, the court must "identify and then neutralize the taint by tailoring relief appropriate in the circumstance." United States v. Morrison, 449 U.S. 361, 364 (1981). Courts must consider "the government's culpability for the loss [of the evidence], together with a realistic appraisal of its significance when viewed in light of its nature, its bearing upon critical issues in the case and the strength of the government's untainted proof." United States v. Grammatikos, 633 F.2d 1013, 1020 (2d Cir. 1980). The key issue is still whether there is "a reasonable probability that had the evidence been disclosed, the result of the trial would have been different." Kowalczyk v. United States, 930 F. Supp. 1127, 1145-46 (S.D.N.Y. 1996).

The district attorney objects to the finding that Taylor's statements constitute Brady material. As both the trial court and Magistrate Judge Francis found, Taylor's statements

6

to the police were favorable to Rosario because they contradicted certain aspects of Harris's testimony. Accordingly the statements constitute Brady material and the district attorney's objection is overruled.

Rosario argues that had the statements been disclosed in a timely manner, defense counsel could have spoken with Taylor when his memory was fresh. Rosario also argues that the prosecution is particularly culpable because they were aware of Taylor's cognitive disability. However, the late disclosure of Taylor's statements did not prejudice Rosario because Rosario received the statements six weeks prior to trial and his counsel vigorously cross-examined Harris. Any impeachment from Taylor's testimony would have been cumulative and would not have been material. Moreover, the trial court provided appropriate relief—allowing the statements to be admitted and issuing an adverse inference instruction. In fact, the record reflects that Taylor's testimony would have been of minimal value given the cross-examination he would have faced regarding his memory loss and cognitive disability.

## IV. Ineffective Assistance of Counsel

"When a convicted defendant complains of the ineffectiveness of counsel's assistance, the defendant must show that counsel's representation fell below an objective standard of reasonableness" and "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland v. Washington, 466 U.S. 668, 688, 694 (1984). "As a general rule, a habeas petitioner will be able to demonstrate that trial counsel's decisions were objectively unreasonable only if there was no tactical justification for the course taken." Lynn v. Bliden, 443 F.3d 238, 247 (2d Cir. 2006). Within the broad range of tactical trial strategy entitled to deference is "[t]he decision [to] call a particular witness . . . ." United States v. Luciano, 158 F.3d 655, 660 (2d Cir. 1998).

7

Rosario argues that his counsel was ineffective for failing to call three witnesses. Two potential witnesses—Brenda Blair and Terell Blair—would have contradicted Harris's testimony that Rosario gave Jackson a gun. At sentencing, Rosario's counsel stated that both were hostile to Rosario and refused to testify on his behalf. (Report at 27.) The decision not to call two potentially hostile witnesses who would serve to further impeach Harris was within the broad range of tactical decisions entitled to deference. Counsel also indicated at sentencing that the third potential witness—Yolanda Taylor, Harris's girlfriend at the time—stated that Harris admitted to her that he had committed the murders and that Rosario was not involved. (Report at 27.) However, there is nothing in the record to indicate that counsel's decision not to call Yolanda Taylor was anything other than a tactical decision. There is no indication that Yolanda Taylor was willing to testify at the time, especially given that she would be implicating her boyfriend. Further, no affidavit from Ms. Taylor was submitting describing the substance of the testimony she would have given. Accordingly, Rosario's ineffective assistance of counsel claim fails.

The district attorney also objects to any consideration of documents contained in a motion filed by Rosario that included a petition to expand the record for review. This Court has not considered any such documents.

This Court finds that the remainder of the Report is not facially erroneous, and affirms and adopts it.

CONCLUSION

This Court adopts the thorough and well-reasoned Report of Magistrate Judge James C. Francis IV. Because "jurists of reason would [not] find it debatable" that the petition should be resolved in a different manner, a certificate of appealability will not issue. See Slack v. McDaniel, 529 U.S. 473, 483 (2000). In addition, this Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith. The Clerk of the Court is directed to terminate all pending motions and mark this case as closed.

Dated:  June 23, 2009
        New York, New York

SO ORDERED:

WILLIAM H. PAULEY III
U.S.D.J.

*Copies Mailed to:*

Mr. Pedro Rosario
#94-A-2927
Shawangunk Correctional Facility
P.O. Box 700
Wallkill, NY 12589
*Petitioner Pro Se*

Kayonia L. Whetstone, Esq.
Assistant District Attorney
Bronx County District Attorney's Office
198 East 161 Street
Bronx, NY 10451
*Counsel for Respondent*

9